Pamela Jean Whitlow appeals from a summary judgment entered in favor of Bruno's, Inc., and its agents in a lawsuit charging Bruno's with malicious prosecution, false imprisonment, false arrest, intentional infliction of emotional distress, slander, misrepresentation, invasion of privacy, and assault. Because Whitlow makes no arguments in her brief regarding her claims for false arrest, intentional infliction of emotional distress, slander, or invasion of privacy, no discussion regarding those claims is necessary.
The underlying facts and proceedings in this case may be briefly stated. In November 1987, Pamela Jean Whitlow and a male friend entered the Bruno's grocery store located on McFarland Boulevard in Tuscaloosa. Ms. Whitlow went to the section of the store that rents taped movies for videocassette players. After deciding which videotaped movies to rent, Ms. Whitlow went to the video counter and showed the employee behind the counter her membership card. Ms. Whitlow then asked the employee if she could pay the videotape rental fee at the check-out counter along with her groceries. The employee consented, but only after Ms. Whitlow had signed a coded pink slip of paper assuming liability for the tapes. The employee instructed *Page 1237 
Ms. Whitlow to give the cashier the coded pink slip of paper when she checked out, so that the rental fee could be paid at that time. The employee then looked up Ms. Whitlow's membership application and gave her the two videotapes she had selected. Ms. Whitlow placed the two tapes into her shopping cart and completed her grocery shopping.
When Ms. Whitlow arrived at the checkout counter, she paid for her grocery items in cash but failed to pay for the two videotape rentals.[1] She went through the checkout line and exited the store, pushing the grocery cart. Michael Fike, the "front end" manager for Bruno's followed Ms. Whitlow outside and asked her if she had anything that belonged to Bruno's. Ms. Whitlow explained that she had merely forgotten about the tapes and asked Fike if she could pay the rental fee. Fike replied that the manager would have to make that decision. Fike then asked her to come back into the store. Ms. Whitlow was taken to an office inside the store, where she was questioned by Sidney Cannon, the manager on duty. The police were called shortly thereafter. Police Officers Baker and Thompson arrived and questioned Bruno's employees and Ms. Whitlow. After handcuffing Ms. Whitlow, the officers took her down to police headquarters. She was then transferred to the county jail and was eventually released on bond later that night.
On January 13, 1988, a preliminary hearing was held in the District Court of Tuscaloosa County, wherein the court found sufficient probable cause to bind Ms. Whitlow's case over to the Tuscaloosa County grand jury.
On January 29, 1988, Ms. Whitlow was indicted by the Tuscaloosa County grand jury for theft of two videocassette tapes. On August 19, 1988, she was tried in the Circuit Court of Tuscaloosa County, where she was found not guilty.
The issue presented for our review is whether the trial court erred in ruling, as a matter of law, that there was no substantial evidence of 1) malicious prosecution; 2) false imprisonment; 3) assault; and 4) misrepresentation.
Rule 56, A.R.Civ.P., requires that, in order to enter a summary judgment, the court determines that 1) there is no genuine issue of material fact and 2) the moving party is entitled to a judgment as a matter of law. The action in the present case was commenced after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence rule." Ala. Code 1975, § 12-21-12 (Supp. 1988).
The plaintiff in a malicious prosecution case must prove each of the following elements: 1) that a prior judicial proceeding was instigated by the defendant 2) without probable cause and 3) with malice; 4) that that prior proceeding was terminated in the plaintiff's favor; and 5) that the plaintiff suffered damages as a result of that prior proceeding. Alabama Power Co.v. Neighbors, 402 So.2d 958 (Ala. 1981). The Neighbors Court further explained why such a heavy burden of proof is necessary in malicious prosecution cases:
 "[T]he plaintiff must prove [all of the elements] . . . in order to prevail because an action for malicious prosecution is not favored at law. This Court stated its reasoning for such a rule in Birwood Paper Co., [v. Damsky, 285 Ala. 127, 229 So.2d 514 (1969)], citing Boothby Realty Co. v. Haygood, 269 Ala. 549, 114 So.2d 555 (1959):
 " '[A]nyone who has reasonable cause to believe that there is reasonable cause for legal redress and protection has a lawful right to seek such redress without risk of being sued and having to respond in damages for seeking unsuccessfully to enforce his rights.' "
Neighbors, supra, at 962.
It is almost platitudinous to restate the well-entrenched rule that in malicious prosecution cases the finding of an indictment by a grand jury, against a defendant in a prior judicial proceeding, constitutes prima facie evidence of the existence of probable cause. Lumpkin v. Cofield, 536 So.2d 62
(Ala. 1988). As further noted in Lumpkin, *Page 1238 
however, "[s]uch a prima facie defense can be overcome by a showing that the indictment 'was induced by fraud, subornation, suppression of testimony, or other like misconduct of the party seeking the indictment' " Id. at 64 (citation omitted).
In support of her argument that Bruno's lacked probable cause, Ms. Whitlow states in her brief, in part, as follows:
 "[The police] were not informed that Pam Whitlow had a membership card, that her application had been approved by the Defendants, and that the Defendants had her verified name, address and telephone number (Deposition of T. Cannon p. 69). [Moreover,] the police were not shown the membership application or told of Bruno's policy with regard to late movie returns by customers.
. . . .
 "In addition, at the trial of Pam Whitlow, the Defendants could not produce the membership application of Pam Whitlow (R. 124). Nor could they produce the alleged stolen tapes (R. 70). This inability to produce exculpatory documents or the tapes themselves was substantial evidence of misconduct on the part of Defendants to rebut the grand jury indictment.
 "The membership form between Pam Whitlow and Defendant, Bruno's, Inc., contained all the terms and conditions of the obligations and duties between the parties (R. 135-136). The failure of the Defendants to call this agreement to the attention of the law enforcement officers, the District Court, and grand jury constitutes substantial evidence of suppression of evidence. The membership form contained the following term and condition: Member will be liable for criminal prosecution for failing to return any and all of the same equipment (R. 136). [Emphasis added.] Not until a person fails to return equipment can they be responsible for criminal prosecution under the contract. Clearly the contract itself was substantial evidence of the lack of probable cause."
Although this argument has a certain allure, we do not find the argument persuasive. As stated in this opinion, Ms. Whitlow asked the Bruno's employee who worked behind the counter at the video section of the store if she could pay the rental fee for the tapes at the check-out counter along with her groceries. Therefore, notwithstanding the fact that the membership contract between Ms. Whitlow and Bruno's is devoid of any language stating that the customer must pay the rental fee in advance, Ms. Whitlow, nevertheless, did agree to pay in advance. Therefore, Ms. Whitlow's failure to pay the rental fee for the tapes at the check-out counter supports a finding of probable cause. Having so found, we pretermit any discussion of the four remaining elements of malicious prosecution.
With respect to the false imprisonment issue, Code 1975, § 15-10-14(a) and (c), is dispositive:
 "(a) A peace officer, a merchant or a merchant's employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person and that he can recover them by taking the person into custody may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time. Such taking into custody and detention by a peace officer, merchant or merchant's employee shall not render such police officer, merchant, or merchant's employee criminally or civilly liable for false arrest, false imprisonment or unlawful detention."
. . . . .
 "(c) A merchant or a merchant's employee who causes such arrest as provided for in subsection (a) of this section of a person for larceny of goods held for sale shall not be criminally or civilly liable for false arrest or false imprisonment where the merchant or merchant's employee has probable cause for believing that the person arrested committed larceny of goods held for sale."
A merchant, pursuant to § 15-10-14(a) and (c), is given the statutory right to detain *Page 1239 
a person if he has probable cause for suspecting that items from his store have been unlawfully taken. It must therefore be ascertained whether Bruno's had probable cause to detain Ms. Whitlow.
It is without dispute that Ms. Whitlow walked out of the Bruno's grocery store with two videotapes without first paying for them. Although Ms. Whitlow maintains that she mistakenly walked out of the store without first paying the rental fee, she nevertheless concedes that she walked out of Bruno's with the videotapes. Moreover, a preliminary hearing was held in the District Court of Tuscaloosa County, wherein that court found probable cause to bind Ms. Whitlow's case over to the Tuscaloosa County grand jury. Thereafter, Ms. Whitlow was indicted by the grand jury of Tuscaloosa County. After reviewing the record, we find it clear that there is no genuine issue of material fact as to whether probable cause existed to detain Ms. Whitlow. Goodwin v. Barry Miller Chevrolet, Inc.,543 So.2d 1171 (Ala. 1989). Thus, summary judgment was also proper on Ms. Whitlow's claim seeking damages for false imprisonment.
We next turn to the assault issue. At the outset, we should emphasize that § 15-10-14(a) and (c), supra, provide a merchant no defense to an assault charge made by a customer. Super XDrugs of Alabama, Inc. v. Martz, 51 Ala. App. 370, 286 So.2d 47
(1973). Generally speaking, the question whether there is an assault depends more upon the apprehensions created in the mind of the person claiming to have been assaulted than upon the intentions of the alleged tort-feasor. See, generally, W. Prosser and P. Keeton, Law of Torts § 10 (5th ed. 1984). InWestern Union Telegraph Co. v. Hill, 25 Ala. App. 540,150 So. 709, cert. denied, 227 Ala. 469, 150 So. 711 (1933), our Court of Appeals had this to say:
 "Blackstone's definition of an assault is: 'An attempt or offer to beat another, without touching him; as if one lifts up his cane or his fist in a threatening manner; or strikes at him but misses him.' As observed by Gaynor, J., in Prince v. Ridge, 32 Misc. 666, 66 N.Y.S. 454 [1900], this is not a complete definition, but is sufficient to serve as an illustration of the nature of an assault which will support an action.
 "In this state an assault and battery is: 'Any touching by one person of the person of another in rudeness or in anger.' Seigel v. Long, 169 Ala. 79, 53 So. 753, 754 [1910], 33 L.R.A. (N.S.) 1070; Jacobi v. State, 133 Ala. [1], 17, 32 So. 158 [1902].
 "(1) While every battery includes an assault, an assault does not necessarily require a battery to complete it. What it does take to constitute an assault is an unlawful attempt to commit a battery, incomplete by reason of some intervening cause; or, to state it differently, to constitute an actionable assault there must be an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented. 5 Corpus Juris, 615(1); Prince v. Ridge, 32 Misc. 666, 66 N.Y.S. 454."
25 Ala. App. at 541-42, 150 So. at 710.
Regarding the allegations of assault, Ms. Whitlow stated at her deposition as follows:
"Q And what happened then?
"A He [Sidney Cannon] asked me to come inside.
"Q And did you do that?
"A Oh, yes.
"Q Did he touch you?
"A I don't remember.
"Q And once you were inside, what happened?
"A They asked me to come in the office.
"Q Did you do that?
"A Yes.
 "Q They didn't pull you in the office or drag you in there, did they?
 "A No. Mr. Cannon sort of pushed me into the office
"Q Sort of pushed you into the office? *Page 1240 
"A Uh-huh.
 "Q What do you mean by sort of pushed you into the office?
"A Just kind of had his arm behind me.
"Q Pushing you with force or guiding you or what?
 "A I don't know his intent. I mean, he just kind of wanted me in there.
"Q I mean, did he actually touch you?
 "A Oh, he didn't knock me into the wall or anything.
 "Q Did he even touch you? Do you recall whether he did or didn't touch you?
"A I think he did.
"Q You think he touched you?
"A Uh-huh.
 "Q You think he touched you on the back to direct you into the office?
"A Yeah.
"Q But you are not even sure he did touch you?
"A I believe he touched me."
(Deposition of Pamela Jean Whitlow, pp. 49-50.)
 "Q Now, at that point in time [during the office interrogation by Bruno's employees] was he threatening you in any way?
"A He was loud.
"Q He was talking loud?
"A It is an inherently threatening situation.
"Q Well, was he touching you in any way?
 "A He had before I believe, but he was — they were just standing close in my face. They, I mean — I don't mean anyone else was in there. I mean, in general all of the people were very threatening, close up into the face sort of thing.
 "Q Did anybody touch you or hit you or physically abuse you in any way?
"A In the course of the evening?
"Q Yes.
"A Uh-huh.
 "Q Somebody did hit you or curse you? "MR. PRINCE: Or touch her. You have asked three things.
"A Touch.
"Q Oh, okay. Did anybody hit you?
"A No one duked me in the face.
"Q Did anybody touch you in a rough manner?
"A Yes.
"Q Who did that?
 "A Mr. Cannon when I was coming in. "Q He touched you in a rough manner? "A Uh-huh.
"Q Where did he touch you?
 "A I believe — well, you have asked me this before.
 "Q Was that the situation that you told me about before?
"A Uh-huh.
"Q Any time other than that?
"A Not that I can recall."
(Deposition of Pamela Jean Whitlow, pp. 64-65.)
A simple reading of Ms. Whitlow's deposition testimony suggests that, under the circumstances, Ms. Whitlow did not possess a well founded fear of an imminent battery. In fact, Ms. Whitlow's deposition testimony is devoid of any allegations that she was ever threatened with physical harm. Thus, summary judgment was also proper on Ms. Whitlow's claim seeking damages for assault.
The final issue presented involves Ms. Whitlow's claim seeking damages for misrepresentation. Specifically, Ms. Whitlow seeks damages for deceit under Code 1975, §§ 6-5-103
and 6-5-104.
"§ 6-5-103. Deceit — Right of action generally.
 "Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood. (Code *Page 1241 
1907, § 2469; Code 1923, § 5677; Code 1940, T. 7, § 110.)
"§ 6-5-104. Same — Fraudulent deceit.
 "(a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.
 "(b) A deceit within the meaning of this section is either:
 "(1) The suggestion as a fact of that which is not true by one who does not believe it to be true;
 "(2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
 "(3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or
 "(4) A promise made without any intention of performing it. (Code 1923, §§ 7353, 7354; Code 1940, T. 7, §§ 111, 112.)"
It should be emphasized that the burden of proof "rests upon the plaintiff to prove each of the foregoing elements. If a plaintiff fails to carry this burden with regard to any of those elements, a recovery cannot be had." Patel v. Hanna,525 So.2d 1359, 1360 (Ala. 1988).
An action for deceit, under § 6-5-103 and § 6-5-104, results from either a willful or reckless misrepresentation or a suppression of material facts with an intent to mislead. Ms. Whitlow argues that the manager of Bruno's, Sidney Cannon, induced her into a confession of guilt. Ms. Whitlow's deposition testimony, regarding her claims of misrepresentation, reads as follows:
 "A [Sidney Cannon] said something like, 'Tell me what happened.' And I told him something like, 'I checked out these movies and I forgot to pay the rental. I am very sorry. Can I give you the rental for them? Can I give you the four dollars?'
"Q What did he say?
 "A He said something like — and this is pretty close to it, 'Look, we know you have been stealing from us. If you just tell me the truth, I will let you get out — I will let you leave. All I want you to do is to be truthful with me, and I will let you go.'
"Q Then what did you say?
 "A And then I told him what he wanted to hear so I could go.
"Q What did you tell him?
 "A I told him, 'Okay. I took them. I didn't pay the rental on them.'
 "Q Did you tell him that you took them intending not to pay the rental?
"A I don't remember if it was that specific.
 "Q Well, tell me as best you can the exact words you told Mr. Cannon.
 "A I did tell you the best that I could what I recalled."
Reviewing the evidence in a light most favorable to the non-moving party, we are constrained to hold that the question of whether Cannon's statement constitutes a misrepresentation did not constitute a question of fact properly to be passed upon by a jury.
As we understand the plaintiff's misrepresentation claim, it is based on the following facts: that she was taken into the office because she left Bruno's without paying for the rental tapes; that she asked if she could pay for them and be released and the agent said: "Look, we know you have been stealing from us. If you just tell me the truth, I will let you get out — I will let you leave. All I want you to do is to be truthful with me, and I will let you go." Then, says the plaintiff, she "told him what he wanted to hear so [she] could go"; that is, she admitting stealing the tapes, and she now claims that her admission was a lie.
It is obvious that at the time the alleged misrepresentation was made, the plaintiff had already admitted that she had left the store without paying for the tapes and the Bruno's agent had told her that she was suspected of stealing.
We affirm the summary judgment as to all of the claims.
AFFIRMED. *Page 1242 
HORNSBY, C.J., and MADDOX, ALMON, SHORES, STEAGALL and KENNEDY, JJ., concur.
[1] The rental fee for each tape was $2.00, plus tax.