Deirdre M. Lewis, a minor, and Lorraine S. Lewis, individually and as Deirdre's mother, sued Donald G. Roberts, doing business as Don Roberts Insurance Agency, alleging negligence, fraudulent deceit, and suppression. The Lewises later added State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") as a defendant, alleging the same causes of action and further alleging that State Farm was liable for Roberts's wrongful acts under the doctrines of respondeat superior and agency. The trial court entered a summary judgment for State Farm as to the fraudulent deceit and suppression claims and made that judgment final pursuant to Rule 54(b), Ala.R.Civ.P.; the Lewises did not appeal. The trial court also entered a summary judgment for Roberts as to these two claims, but did not make that judgment final under Rule 54(b). The case proceeded to trial only upon the issue of negligence; the trial court directed a verdict for the defendants. The Lewises appeal from the judgment based on the directed verdicts and from the summary judgment entered for Roberts.
The record reveals these facts: The Lewises became State Farm policyholders in 1969, and Roberts became their agent in 1971. In 1987, Lorraine Lewis and her husband, William Lewis, owned three automobiles and had an individual insurance policy for each, which provided uninsured motorist coverage of $20,000 per person, not to exceed $40,000 per accident, or "20/40" coverage. Under the principle of "stacking," the Lewises had coverage of up to $120,000 per person.
In November 11, 1987, William Lewis contacted Roberts to obtain a policy for a fourth vehicle he had just bought for his daughter. The substance of their conversation is in dispute. According to William Lewis, Roberts informed him that "20/40" coverage was inadequate and that he should get coverage of $100,000 per person, not to exceed $300,000 per accident, or "100/300" coverage. William Lewis said that Roberts advised him to purchase this level of uninsured coverage on all four automobiles, and that Lewis stated, "Fine, do it." Roberts completed an application for a policy on the Lewises' new vehicle, providing "100/300" uninsured motorist coverage on November 11; however, he did not increase the uninsured motorist coverage on the other three policies.
The Lewises thereafter received a policy for the new automobile, with a declarations page clearly showing that the policy contained "100/300" benefits. Between November 11, 1987, and September 28, 1988, State Farm sent the Lewises separate premium notices for each policy, and the notices for the previous three policies showed that the coverage level of those policies remained at 20/40. The Lewises did not review those premium notices and thus did not note the fact that the coverage had not been increased on three of the four vehicles.
On September 28, 1988, Lorraine and Deirdre Lewis were involved in a car accident and suffered serious injuries. The automobile they were traveling in had 20/40 coverage. The party at fault had liability insurance with the Government Employees Insurance Company, under which Lorraine Lewis received $199,000 and Deirdre Lewis received $20,000. State Farm paid the Lewises $160,000 in uninsured motorist benefits.
In November 1988, William Lewis met with Roberts to review the family's insurance coverage. Roberts told him that the family's deductible was too high and that their level of uninsured motorist coverage should be increased to the "100/300" level on all policies. There was no mention of the parties' prior discussion of increasing the uninsured benefits. William Lewis brought along his personal insurance file to the meeting and, at the end of the discussion, asked Roberts if he still needed the papers in the file. When Roberts said that he did not, William Lewis threw them all away.
After this meeting, William Lewis remembered that Roberts had recommended increasing the uninsured motorist coverage on all cars in September, when William bought insurance for the fourth car. He wrote a letter on June 1, 1989, reminding Roberts of the November 11, 1987, telephone conversation and asking him to "take such steps as may be necessary to have State Farm admit" that the family should receive "100/300" benefits *Page 357 
rather than "20/40" benefits, based on his November 1987 conversation with Roberts. Roberts did not reply to this letter or to the two follow-up letters that William Lewis subsequently wrote.
William Lewis thereafter went to Roberts's office to obtain a copy of the family's insurance file and found that much of the file had been "purged." He sought to obtain the missing records directly from State Farm and was informed that Roberts had requested the file clerk not to release the records. He eventually received the records from State Farm and subsequently sued.
It is not within the trial court's discretion to direct a verdict; therefore, a directed verdict is not afforded any presumption of correctness on appeal. McCord v. McCord,575 So.2d 1056 (Ala. 1991). Our function is to review the entire evidence in a light most favorable to the nonmovant and to allow all reasonable inferences a jury could draw, not just those inferences this Court might think are more probable.Anderton v. Gentry, 577 So.2d 1261 (Ala. 1991).
The first issue raised is whether the trial court erred in directing a verdict for the defendants as to the issue of negligence. The Lewises argue that Roberts negligently failed to increase the uninsured motorist coverage on the three other insured vehicles, following the conversation William Lewis says he had with Roberts in November 1987. When an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom.Montz v. Mead Charles, Inc., 557 So.2d 1 (Ala. 1987). Once the parties have come to an agreement on the procurement of insurance, the agent or broker must exercise reasonable skill, care, and diligence in effecting coverage. Montz.
There is evidence to indicate that Roberts undertook to procure 100/300 uninsured motorist coverage on all of the Lewises' insured vehicles when he provided coverage on the new, fourth vehicle. There was also testimony from State Farm employees indicating that it is customary for State Farm to issue the same level of uninsured motorist coverage as to all vehicles within one family and that an agent in the ordinary course of his duties does not write policies for varying levels of such coverage on cars within one family.
Roberts denies that he ever discussed what level of uninsured motorist coverage to issue on the fourth vehicle or ever agreed to increase the amount of coverage on the other three vehicles; rather, he claims that he voluntarily placed 100/300 coverage on the fourth vehicle without ever consulting the Lewises. In viewing the evidence in a light most favorable to the Lewises, however, we find evidence from which a jury could infer that Roberts undertook to procure higher levels of uninsured motorist coverage for all of the Lewises' insured vehicles, and then unjustifiably or negligently failed to do so. That portion of the judgment based on the directed verdict for Roberts is hereby reversed and the cause is remanded for further proceedings.
The Lewises make no argument in support of their claim of negligence against State Farm; therefore, the judgment for State Farm as to negligence is affirmed. See Bogle v. Scheer,512 So.2d 1336 (Ala. 1987).
The Lewises next argue that the trial court erred in entering the summary judgment for Roberts on the issue of fraudulent deceit. They base their claim on Ala. Code 1975, §§ 6-5-103 and -104, under which an action for deceit arises from either a willful or reckless misrepresentation or a suppression of material facts with an intent to mislead. Whitlow v. Bruno's,Inc., 567 So.2d 1235 (Ala. 1990). To be liable for fraudulent concealment, one must either be under an obligation to communicate arising either from a confidential relationship or from the particular circumstances of the case or knowingly conceal a material fact with intent to deceive. Cornelius v.Austin, 542 So.2d 1220 (Ala. 1989).
There is no evidence that Roberts concealed the fact that he did not procure the same level of uninsured motorist coverage on all the Lewises' vehicles. On the contrary, the record shows that after November 1987, *Page 358 
when Roberts allegedly agreed to procure 100/300 coverage on all the vehicles, he twice sent out individual premium notices for each of the vehicle policies which clearly showed that the fourth vehicle had the 100/300 coverage and that the other three vehicles were still carrying only 20/40 coverage. After the accident, Roberts met with William Lewis and stated outright that three of the four vehicles were without the higher level of coverage. While there is evidence that Roberts purged the Lewises' file and discarded papers, there is no indication that he did so in an attempt to conceal the fact that he failed to procure the same level of uninsured motorist coverage on all four of the Lewises' automobiles. There is no evidence that Roberts willfully or deceitfully failed to procure the increased coverage. Because the Lewises presented no evidence to establish the elements of suppression and deceit, the trial court properly entered the summary judgment for Roberts on these issues.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS and INGRAM, JJ., concur.