**Beverly QUILLEN, Plaintiff,**

v.

**AMERICAN TOBACCO COMPANY and Donald Knight, Defendants.**

**No. CV–93–A–1331–S.**

United States District Court, M.D. Alabama, Southern Division.

Jan. 25, 1995.

---

Ann C. Robertson, Rocco Calamusa, Robert Childs, Birmingham, AL, for plaintiff.

D. Frank Davis, Patricia Powell Burke, David R. Arendall, Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER
## I. INTRODUCTION

ALBRITTON, District Judge.

This cause is before the court on Defendants' Motions for Summary Judgment, both filed October 11, 1994.

Plaintiff brought suit in Federal Court on November 5, 1993, alleging violations of 42 U.S.C. § 2000e *et seq.*, commonly known as Title VII of the Civil Rights Act of 1964, as amended, and alleging state law claims for Invasion of Privacy, the Tort of Outrage, and Assault and Battery. Plaintiff has named in her action both her employer, American Tobacco Company ("American Tobacco") and Donald Knight ("Knight"), an individual who was at one time the plaintiff's supervisor at American Tobacco.

There are two theories to plaintiff's Title VII claims. Plaintiff first alleges that she was the victim of sexual harassment under a theory of hostile work environment. Secondly, she contends that defendant discharged her in retaliation for her opposition to the discriminatory treatment that she received.

Defendant American Tobacco ("American Tobacco") has moved for Summary Judgment only as to plaintiff's Title VII claims. American Tobacco asserts a defense based on the 180 day filing requirement mandated under Title VII for plaintiff's sexual harassment claim. American Tobacco also maintains that plaintiff has failed to make out a prima facie case under both Title VII sexual harassment and Title VII discrimination and retaliation.

Further, American Tobacco contends that should the court determine that a prima facie case under plaintiff's retaliation claim has been established, that American Tobacco has successfully rebutted plaintiff's claim. Finally, American Tobacco argues that if the court denies its Motion for Summary Judgment as to all claims against it, the plaintiff should be barred from any prospective relief based on the after-acquired evidence doctrine.

Defendant Knight has moved for Summary Judgment as to all claims against him. Knight, like American Tobacco, asserts that the 180 day filing requirement bars plaintiff's

Title VII claims against him. Knight also asserts that a suit against him in his individual capacity under Title VII is not proper. As to the state law claims against him, Knight argues that, should the court dismiss the Title VII claims against him, it will have lost jurisdiction over the state law claims.

For the reasons discussed below, the court finds that defendant American Tobacco's Motion for Summary Judgment is due to be DENIED. The court finds, however, that defendant Knight's Motion for Summary Judgment is due to be GRANTED as to the Title VII claims against him, but DENIED as to the claims for Outrage, Invasion of Privacy and Assault and Battery.

## II. FACTS

Submissions before the court establish the following facts:

Plaintiff was employed as a sales representative for American Tobacco beginning on October 14, 1991. At the time plaintiff was hired, defendant Knight was her immediate supervisor. In January, 1992, plaintiff complained to management that Knight had sexually harassed her. The company held several meetings, and determined that Knight had indeed harassed Quillen. As a result, Knight was demoted to the position of sales representative, he was suspended without pay for one week, and his salary was cut 25%. Knight was reassigned to a sales zone which, according to defendant, did not overlap with the plaintiff's.

Plaintiff claims that following Knight's demotion, the workplace at American Tobacco remained hostile. Plaintiff alleges that, as a result of the incident with Knight, she began to have difficulties with several of her assigned customers. According to plaintiff, one of American Tobacco's agents told a customer that Quillen had "set up" Knight on her sexual harassment complaint. Plaintiff alleges that she requested to be transferred to another sales district in order to escape the problem, but that the defendant American Tobacco refused.

Additionally, plaintiff states that she was forced to attend a meeting at which Knight was present, despite her having informed

American Tobacco that she could not bear to be in the same room with Knight. Plaintiff avers that the previous harassment by Knight, combined with the "gossip and hostility" from her customers and the failure of American Tobacco to take adequate steps to alleviate the situation created and perpetuated a hostile work environment.

Defendant denies that an agent of American Tobacco informed any of Ms. Quillen's customers as to any part of the previous complaint against Knight. Defendant acknowledges that plaintiff and Knight were at the same meeting, but contends, correctly the court believes, that Knight did not harass Quillen at this meeting. In fact, Knight did not even speak to Quillen.

According to American Tobacco, sometime in September they learned that plaintiff had falsified reports that she had made to the company concerning customer calls. This fact is supported by an affidavit submitted by defendant's Southern Field Director, Paul Sitler. Defendant contends that the falsification of reports was their legitimate and non-discriminatory reason for terminating Quillen.

Plaintiff admits that she falsified reports, and also admits that this was not the first time that she had done so. However, plaintiff disputes that this was the reason for her termination. According to Quillen, Knight also had falsified reports in the past, American Tobacco knew this, and still retained Knight in its employ. Plaintiff was fired by the defendant company on September 22, 1993.

Defendant also alleges that during the course of discovery they acquired information that Quillen had lied on her application for employment. Plaintiff apparently misrepresented her reasons for leaving two previous positions. In both cases plaintiff stated that she left those jobs because she relocated her residence. In fact, plaintiff had been fired from both positions. According to the defendant, this information should preclude recovery by plaintiff in that she would not have been hired but for her misrepresentation. Because she would not have been hired, she suffered no damages in losing the job.

Plaintiff again counters that defendant's claim that she would not have been hired had they possessed this information is not credible. She alleges and avers that American Tobacco knew that another employee, Knight, had also lied on his application as to a previous termination but was hired nonetheless.

## III. STANDARD FOR SUMMARY JUDGMENT

 According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is only appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating to the court the basis for the motion and identifying those portions of the pleadings and evidentiary submissions which show an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir.1993). If the ultimate burden of persuasion at trial rests on the non-movant, the party seeking summary judgment can meet this standard either by demonstrating that the non-movant's evidence is not sufficient to establish an essential element of his or her claim, or by submitting affirmative evidence that negates an essential element of the claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

 The burden then shifts to the non-movant to establish the existence of an essential element to the claims, and on which they bears the burden of proof at trial. *Id.* To satisfy this burden, the non-movant cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

 In deciding a motion for summary judgment, the court must determine whether there exists genuine, material issues of fact to be tried. If there are not, the movant is entitled to a judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,*

809 F.2d 1559 (11th Cir.1987). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Hairston,* 9 F.3d at 919 (citations omitted). It is the substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1505 (11th Cir.1989).

■■■ All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983). *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). When the court considers a motion for summary judgment, it must avoid weighing conflicting evidence, making credibility determinations and deciding material factual issues. *Hairston,* 9 F.3d at 919. In the case of an employment discrimination claim, which often requires ascribing motive or intent to a party, the court acknowledges from the outset that decisions in this circuit have expressed some hesitation in granting summary judgment. *See, e.g., Batey v. Stone,* 24 F.3d 1330 (11th Cir.1994). With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate or whether there exist genuine issues of material fact necessitating a trial.

## IV. CONTINUING VIOLATION

■■■ Title VII requires a Plaintiff to file a complaint with the Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged violation. 42 U.S.C. § 2000e–5(e). Failure to file before this time elapses requires the court to dismiss a subsequent lawsuit as untimely. *See, e.g., Dela-ware State College v. Ricks,* 449 U.S. 250, 256, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980); *Smith v. McClammy,* 740 F.2d 925, 927 (11th Cir.1984).

■■■ There is an exception to the 180-day filing requirement, however, where the actions by an employer are part of a pattern of discrimination such that they constitute a continuing violation. Under this doctrine, actions that took place more than 180 days prior to an EEOC filing may in some instances be included in the plaintiff's claim. *Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 449 (11th Cir.1993), *Beavers v. American Cast Iron Pipe,* 975 F.2d 792, 796 (11th Cir.1992). In determining the existence of a continuing violation, the court looks to several factors, including the subject matter of the discrimination, the frequency of the acts, and the permanence of the decision. *Roberts v. Gadsden Memorial Hospital,* 835 F.2d 793, 800–801 (11th Cir.1988).

■■■ In this case, it is clear that the plaintiff's allegations fall under the category of continuing violation and are therefore not time barred. Although it is true that most of the events that created the hostile work environment occurred outside of the 180 day period, this overlooks the nature of the hostile work environment cause of action.

Plaintiff has alleged that the behavior of the defendant and defendant's agents resulted in a workplace that was unbearable. That plaintiff points to no one particular act by defendant within the 180 day period is not relevant. If proven, the alleged conditions under which plaintiff worked violated Title VII. Therefore, under the allegation of a hostile work environment, on each day plaintiff went to work there existed a violation of anti-discrimination law.

■■■ Based on the affidavits of the plaintiff, as well as the submissions of the defendants, a reasonable juror could conclude that the actions taken by Knight created a hostile work environment. Whether that hostility ended once American Tobacco took the steps that it did is not for the court to say. As another judge in this district recently held, "when the alleged hostile environment ceased to exist" is "for the jury to decide." *Saville*.

*v. Houston County Healthcare Auth.*, 852 F.Supp. 1512, 1526–1527 (M.D.Ala.1994). Accordingly, the claims filed under Title VII for sexual harassment are found to be timely.

## V. SEXUAL HARASSMENT

██ The plaintiff has claimed that she was sexually harassed in violation of Title VII. There are two distinct forms of sexual harassment that a plaintiff may proceed under. The first type to be recognized by the court is quid pro quo sexual harassment. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Plaintiff does not claim quid pro quo sexual harassment.

The second type is hostile work environment which was first recognized by the courts as a form of harassment in decisions dealing with discrimination based on race. *See Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971).[1] Since that time, however, the courts have applied hostile work environment to harassment based on gender. *See, e.g., Harris v. Forklift Systems, Inc.*, —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

██ In order to make out a case for sexual harassment, the plaintiff must show several elements. These are, "(1) that the employee belongs to a protected group; (2) that the employee was subject to 'unwelcome' sexual harassment; (3) that the harassment complained of was based on sex; (4) that the harassment complained of affected a 'term, condition or privilege' of employment in that it was sufficiently severe or pervasive 'to alter the conditions of employment and create an abusive working environment.'" and (5) that the employer knew of the problem, and failed to take prompt remedial action. *Sparks v. Pilot Freight Carriers*, 830 F.2d 1554, 1557 (11th Cir.1987) (quoting *Henson v. Dundee*, 682 F.2d 897, 903 (11th Cir.1982), *See also, Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir.1989).

██ It is clear in this case that plaintiff belongs to a protected class and that the alleged harassment was unwelcome. The de-

fendants, however, contend the plaintiff suffered no harassment that was based on her gender. The court finds that plaintiff has presented sufficient evidence at this stage to create an issue of fact as to this matter. Plaintiff avers that she was the subject of rumors and gossip that were the result of defendant or defendant's agents' conduct. According to the plaintiff, an agent of American Tobacco falsely informed a customer of Quillen's that she had a consensual sexual relationship with Knight, and had then accused him of sexual harassment. If proven, these averments would clearly fall under the definition of harassment based on plaintiff's gender.

██ The plaintiff must also show that the harassment was sufficiently pervasive to alter the terms or conditions of her employment. The Supreme Court has held that "whether a work environment is 'hostile' or 'abusive' can be determined only looking at all the circumstances ..." *Harris*, —— U.S. at ——, 114 S.Ct. at 371. Accordingly, this element is very fact specific. What constitutes a hostile work environment will usually depend on many different factors and must be examined on an individual case basis. The court also finds that the plaintiff has presented evidence sufficient to render summary judgment improper at this point. At this stage, viewing all submissions in a light most favorable to the plaintiff, the court is unwilling to state that the working conditions at American Tobacco were not hostile as a matter of law.

██ Finally, the plaintiff must prove that the conditions were known to the company, and that the company failed to take prompt remedial action. American Tobacco argues that the actions that it took qualify as prompt remedial measures, and as such, plaintiff's suit should be barred. The court disagrees. That American Tobacco took steps in an attempt to alleviate possible past violations by its agent does not necessarily insulate the defendant. Courts have held that, in order to be considered remedial, the employer's

---

1. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

efforts must be successful. *See, e.g., Saville,* 852 F.Supp. at 1528. Here plaintiff claims that despite the actions taken by the defendant, the conditions of her employment remained hostile. Accordingly, as to this fifth element, there also exists a material issue of fact.

## VI. RETALIATION

■ According to 42 U.S.C. § 2000e–3: It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The burden of proof in a Title VII retaliation case is governed by the same framework as the rest of Title VII. In order to prevail, the Plaintiff must first prove that he

"(1) engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) was disadvantaged by an action of the employer simultaneously with or subsequent to such opposition or participation; and (3) that there is a causal connection between the protected activity and the adverse employment action."

*Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992) (quoting *Whatley v. Metro. Atlanta Rapid Transit Auth.,* 632 F.2d 1325, 1328 (5th Cir.Unit B Dec. 1980)).

■ A plaintiff does not have to prove that an actual discriminatory employment practice occurred to establish the first prong of a prima facie case. *See Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989) ("The employee need not prove the underlying claim of discrimination which lead to [his] protest."). He can satisfy the first prong by showing that he had a reasonable belief that an unlawful employment practice was occurring when he engaged in protected opposition. *Wu v. Thomas,* 863 F.2d 1543, 1549 (11th Cir.1989). In order to establish the requisite

"causal link" required as part of a prima facie case, a plaintiff need only prove that "the protected activity and the adverse action are not wholly unrelated." *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985), *cert. denied,* 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985). *See also, Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993); *EEOC v. Reichhold Chemicals Inc.,* 988 F.2d 1564, 1571–72 (11th Cir.1993).

■ At a minimum, a plaintiff must establish that the employer was actually aware of the protected expression at the time it took adverse employment action. *Goldsmith,* 996 F.2d at 1163; *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1525 (11th Cir.1991); *Simmons,* 757 F.2d at 1189. However, the defendants' awareness may be proven by circumstantial evidence. *Goldsmith,* 996 F.2d at 1163.

■ Once the plaintiff establishes a prima facie case, the burden then shifts to the employer to rebut it by articulating clearly and specifically a legitimate, nondiscriminatory reason for its adverse employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Morgan,* 959 F.2d at 1547. This is a burden of production, not persuasion. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. This established, the burden shifts back to the plaintiff to present some evidence to create an issue of fact as to whether the proffered reason was pretextual and the real reason was discriminatory. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Morgan,* 959 F.2d at 1548.

■ In this case, there exists a question of fact as to whether plaintiff's discharge was related to her opposition to sexual harassment. Plaintiff has clearly established a prima facie case of retaliation. She engaged in a protected activity when she complained to management about Knight's sexual harassment. She obviously suffered an adverse employment decision in that her evaluations took a decidedly negative turn and she was

later terminated. Finally, it is possible, under the facts as presented by the plaintiff, that the termination was not unrelated to her earlier complaints.

The defendant has articulated a legitimate non-discriminatory reason behind its decision; that is, that plaintiff falsified work reports, that this was the second time that plaintiff had been caught for this violation, and that the second occurrence was following a warning by the defendant. However, plaintiff has rebutted that contention sufficiently with evidence that a jury could use to determine that defendant's asserted reason is pretextual. According to plaintiff, defendant Knight also falsified records and was not likewise disciplined. The court must take care to avoid making a determination as to credibility at this stage of the litigation. Where the parties have alleged contradictory facts it is for the jury to determine which party is to be believed. Therefore, plaintiff's retaliation claim is not properly resolved on a motion for summary judgment.

## VII. AFTER–ACQUIRED EVIDENCE

■ Defendant American Tobacco also contends that, should the court deny its Motion for Summary Judgment, the plaintiff should nevertheless be precluded from any prospective relief. Defendant bases this argument on information it acquired during the course of discovery for this action. According to defendant, plaintiff revealed during depositions that she had lied on her job application as to the reasons for leaving at least two previous jobs. Plaintiff had written that she left those positions because she desired to relocate. In actuality, plaintiff was fired in both instances.

The Supreme Court of the United States recently addressed this issue in a case that came from the Sixth Circuit. *McKennon v. Nashville Banner Publishing Co.*, —— U.S. ——, 115 S.Ct. 879, —— L.Ed.2d —— (1995). In *McKennon*, the Court ruled that an employer could not use after-acquired information as a total defense. *Id.* at ——, 115 S.Ct. at 885. The Court held, however, that such information may, on proper proof, bar reinstatement and recovery of front pay. According to the Court, "Where an employer

seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* This would apply equally to a situation such as the one before this court where an employer contends that it would not have hired the individual had it known of the wrongdoing.

In a recent opinion the Eleventh Circuit ruled that after-acquired information may be used to preclude prospective relief to a particular plaintiff. *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1062 (11th Cir.1994). However, as in *McKennon*, the court required that to use the information to excuse its decision, the defendant must show that had it possessed the information it would not have hired the plaintiff at all. *Id.* *Turnes* involved an applicant for a position at the defendant bank. AmSouth argued that the plaintiff had poor credit, and that this would have precluded his being hired had the hiring process proceeded to that stage. The plaintiff presented evidence that other individuals had been hired despite similarly poor credit records. The court held that summary judgment was improper in that the plaintiff had created an issue of fact in that " 'clear credit' may not have actually been a requirement for employment at AmSouth." *Id.* This court also notes that the holding in *Turnes* is not contrary to the Eleventh Circuit opinion relied upon by the defendant, *Wallace v. Dunn Const. Co., Inc.*, 968 F.2d 1174 (11th Cir.1992), vacated and rehearing granted *en banc*, 32 F.3d 1489 (11th Cir.1994). Although it is true that in *Wallace* the court held that after-acquired information could be used to prevent prospective relief to a plaintiff, the court in that case also explicitly stated that this was proper only "assuming that the after-acquired evidence *in and of itself* would have caused [defendant] to discharge [plaintiff]." *Id.* at 1181 (emphasis added).

■ Therefore, according to the recent decision by the Supreme Court, as well as Eleventh Circuit precedent, where an employer can show the plaintiff would not have been hired, or would have been terminated, if

the employer had possessed the after-acquired information, prospective relief such as reinstatement or front pay is inappropriate. However, this is a question of fact. If the employer would not have fired her, or would still have hired her, even with the knowledge it later acquired, the defendant cannot use the information as a defense to prospective relief. The burden of proof is on the defendant.

In this case, the defendant American Tobacco has not shown without dispute that it would not have hired the plaintiff had it known that she was fired from two previous jobs. According to averments by the plaintiff, defendant had other employees who had been hired or retained despite the fact that they were terminated from previous positions. Therefore, a jury might well decide that honesty on the employment application was not in fact as important as American Tobacco now contends.

## VIII. INDIVIDUAL LIABILITY

■ The court will first briefly address possible Title VII claims against Knight brought in his official capacity. According to the Eleventh Circuit, a suit under Title VII brought against an employee as agent of the employer is regarded as a suit against the employer itself. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991). In this case, the employer has already been properly named as a defendant in this action. Accordingly, to proceed against Knight in his official capacity would be redundant. Therefore, all Title VII claims against Knight in his official capacity are properly dismissed.

■ It is unclear from the complaint whether or not plaintiff seeks to name Knight in his individual capacity as a party to her Title VII suit. However, because both Knight and plaintiff addressed this issue in their briefs, the court will assume that plaintiff did intend to include Knight in his individual capacity. Assuming his inclusion, the court finds that Knight is due summary judgment on any Title VII claims against him in his individual capacity as well.

The issue of whether a plaintiff can maintain a suit under Title VII against an individual has caused a split in the federal circuits. Some courts have determined that individuals may be sued in their individual capacity. *See, e.g., Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), vacated in part on other grounds, 900 F.2d 27 (4th Cir.1990); *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir.1986). An argument can be made that this reasoning has been strengthened by the 1991 amendments to Title VII which allowed plaintiffs to recover punitive damages. *See, e.g., Jendusa v. Cancer Treatment Centers of America, Inc.*, 868 F.Supp. 1006 (N.D.Ill.1994). However, other courts have held that the amendments did not alter past law, and that suits against individuals are not permitted. *See, e.g., Busby*, 931 F.2d at 772; *Garcia v. Elf Atochem North America*, 28 F.3d 446, 451 n. 2 (5th Cir.1994); *Miller v. Maxwell's International, Inc.*, 991 F.2d 583, 587 (9th Cir.1991); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993).

For several years, the law in the Eleventh Circuit has been absolutely clear, holding that employee/agents may not be sued in their individual capacity under Title VII. *See Busby*, 931 F.2d at 772 ("Individual capacity suits under Title VII are ... inappropriate."); *see also, Yeager v. Norwest Multifamily, Inc.*, 865 F.Supp. 768, 770 (M.D.Ala. 1994). According to the reasoning in some of the decisions that barred claims against individuals, Congress would have provided for suits against individuals had that been their intent. *See, e.g., Miller*, 991 F.2d at 587.

Very recently an Eleventh Circuit panel published an opinion that appears to endorse the view that an employee who is determined to be an agent of the employer under Title VII may be sued in his individual capacity. *Cross v. Alabama*, 1994 WL 424303, *13–14 (11th Cir.1994). However, if this court reads the *Cross* holding correctly, that opinion made a sharp departure from past precedent.

The court notes that the *Cross* decision is not binding at this time, as a motion for rehearing *en banc*, filed on September 19, 1994, is pending before the Circuit. The Eleventh Circuit has written, "Where circuit authority is in conflict, the earliest panel

opinion resolving the issue in question binds this circuit until the court resolves the issue en banc." *Clark v. Housing Auth. of Alma,* 971 F.2d 723, 726, n. 4 (11th Cir.1992). *See also, U.S. v. Dailey,* 24 F.3d 1323, 1327 (11th Cir.1994); *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). In this instance, therefore, *Busby* controls until the circuit resolves the matter *en banc.*

Finally, while the court recognizes the possibility that the court of appeals may decide at some point to overturn *Busby* and its progeny, it is inclined to believe that, should they address it, the Eleventh Circuit will hold that *Busby* remains good law. Therefore, defendant Knight's Motion for Summary Judgment as to Title VII claims against him in both his official and individual capacities are due to be granted.

## IX. STATE LAW CLAIMS

 The only claims against Knight surviving the dismissal of the Title VII claims against him are the state law claims for outrageous conduct, invasion of privacy, and assault and battery. Having dismissed the Title VII claims against him, no federal claims remain against Knight, and he contends that the court has no jurisdiction to hear the state law claims. The court, however, after considering whether it should exercise supplemental jurisdiction over the state law claim, holds that it should do so.

Under the terms of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089, federal courts must employ supplemental jurisdiction unless there is a specific exception. 28 U.S.C. § 1367(a).[2] *Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 458, 469 (D.D.C.1994). Subdivision (c) of § 1367 gives the court discretion to decline to exercise the supplemental jurisdiction in various circumstances. 28 U.S.C. § 1367(c) (1993).

This court faced a similar issue in a case recently before it. *Yeager,* 865 F.Supp. 768. In *Yeager,* all Title VII claims had been

dismissed against the individual defendant, but there remained Title VII claims against the employer based upon the acts of the individual. In that case, it was determined that "[n]one of the reasons which would authorize the court to decline to exercise supplemental jurisdiction exist in this case." *Yeager,* 865 F.Supp. at 772.

Likewise, in this case, the state law claims asserted by Quillen against Knight are properly before the court. They do not raise novel or complex issues of state law and they will not predominate over the Title VII claim against American Tobacco. The court finds it clearly to be in the interest of judicial economy, and without substantial prejudice to either of the defendants, for the claims against American Tobacco and Knight to be tried at the same time, rather than in separate actions in different courts.

Although Knight's alleged conduct did not give the plaintiff a federal claim against him individually, it is part of the activity that gave rise to a federal claim against his employer. The state law claim against Knight is a part of the same case or controversy as the plaintiff's Title VII claim against American Tobacco. The court will therefore exercise its discretion and will hear those claims.

### Tort of Outrage

 The Alabama Supreme Court first recognized the Tort of Outrage [3] in 1981. *American Road Service v. Inmon,* 394 So.2d 361 (Ala.1981). According to *Inmon,* in order for a plaintiff to prevail, she must show that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Id.* at 365. The person is subsequently liable "for such emotional distress and for bodily harm resulting from the distress." *Id.* However, as the court wrote in *Inmon,* the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, as to be regarded as

---

**2.** Section 1367(a) reads, "Except as provided in subsections (b) and (c) ... the District Courts shall have supplemental jurisdiction over all other claims that are so related to the claims within such original jurisdiction that they form part of the same case or controversy...."

**3.** The tort is more properly referred to as "outrageous conduct," but the court will accept the widely used term "Tort of Outrage" which has been chosen by the plaintiff.

atrocious and utterly intolerable in a civilized society." *Id.*

■ The Tort of Outrage is therefore extremely limited. According to a recent Alabama Supreme Court case, "in the 12 years since Inmon was decided, all cases in which this Court has found a jury question on an outrage claim have fallen within only three categories: 1) cases having to do with wrongful conduct in the context of family burials; 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insurance claim; and 3) a case involving egregious sexual harassment. *Thomas v. BSE Industrial Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993) (citations omitted). In only one instance, then, has that court found that a question of fact also existed as to a claim of outrage arising out of alleged sexual harassment. *Busby v. Truswal Systems Corp.*, 551 So.2d 322 (Ala.1989).

■ Despite the limited nature of the tort, though, there appears to be a question of fact as to whether Knight's actions constituted outrageous conduct. Many of the acts complained of by Quillen are similar to the actions complained of by plaintiff in *Busby*.[4] In *Busby*, the Court did not need to reach the issue of whether there was an issue of fact as to whether an individual supervisor was liable for outrage. In that case, the supervisor had died and was voluntarily dismissed by the plaintiff. However, the Court in *Busby* did note that "there was evidence tending to support the plaintiff's claims against [the supervisor]." Although this is *dicta*, this court reasons that the situations are sufficiently similar to state that there exists an issue of fact as to Knight's liability for the tort of outrage.

*Invasion of Privacy*

■ Alabama has accepted the definition of the Tort of Invasion of Privacy as set forth in Prosser, *The Law of Torts. See Cates v. Taylor*, 428 So.2d 637, 639 (Ala.1983). As laid out in *Cates*, there are four acts that constitute an invasion of privacy in Alabama. These are: "(1) 'the intrusion upon the plaintiff's physical solitude or seclusion,' (2) 'publicity which violates the ordinary decencies,' (3) 'putting the plaintiff in a false but not necessarily defamatory position in the public eye,' and (4) 'the appropriation of some element' of the plaintiff's personality for a commercial use." *See also Busby*, 551 So.2d at 323.

■ The plaintiff in this action clearly is proceeding under the first definition, "intrusion on seclusion." The court has found that there are many actions that the defendant Knight allegedly took that could be found by a jury to satisfy the court's test for the tort of outrage. In fact, according to affidavits filed with the court, many of the facts of this case nearly parallel the facts in *Busby*. This being so, issues of material fact exist as to whether Knight can be held liable for invasion of privacy.

*Assault and Battery*

■ There also exists a substantial question of fact as to the claim for assault and battery. According to the Alabama Supreme Court, "In this state, an assault and battery is: Any touching by one person of the person of another in rudeness or anger." *Whitlow v. Bruno's, Inc.*, 567 So.2d 1235, 1239 (Ala. 1990) (citing *Seigel v. Long*, 169 Ala. 79, 53 So. 753, 754 (1910) and *Jacobi v. State*, 133 Ala. 1, 32 So. 158 (1902)) (internal citations and quotation marks omitted).

4. Among the facts that the court in *Busby* cited, the supervisor "asked [the plaintiff] to swim in the nude with him; ... acted as if he was going to pinch one plaintiff's breasts with a pair of pliers and with his hands; ... put his arm around the plaintiffs, grabbed their arms, and stroked their hair ..." The supervisor also made lewd comments regarding the plaintiffs' sex lives and his own.

In the instant case, plaintiff alleges that Knight used vulgar and suggestive language towards plaintiff. He suggested they "get naked ..."; he arranged for them to share a hotel room, he appeared in the nude in front of the plaintiff, and he allegedly touched her on different occasions and in ways that offended her, including tickling, grabbing her by the waist and trying to kiss her.

These facts are sufficiently similar to the facts in *Busby* to defeat a Motion for Summary Judgment.

According to the plaintiff's affidavits, defendant Knight repeatedly touched her in a manner that was offensive to her. Defendant Knight argues that this did not happen. However, this is for the jury to determine, as is whether the actions, if proven, would be harmful or offensive to the reasonable person. Accordingly, Knight's Motion for Summary Judgment as to plaintiff's claim for Assault and Battery is due to be denied.

## X. CONCLUSION

For the reasons discussed above, the court finds that the Defendant American Tobacco's Motion for Summary Judgment is due to be and is hereby DENIED. The Defendant Knight's Motion for Summary Judgment as to the Title VII claims against him is due to be and is hereby GRANTED. Defendant Knight's Motion for Summary Judgment as to the state law claims against him is due to be, and is hereby DENIED.