Ram R. BELLAM, M.D., Plaintiff,

v.

MEDICAL CENTER ANESTHESIOL-OGY OF ATHENS, P.C., et al., Defendants.

No. 3:96–CV–53(DF).

United States District Court,
M.D. Georgia,
Athens Division.

Jan. 12, 1998.

Abdulhakim Saadiq, Decatur, GA, for Plaintiff.

Gary Bryan Blasingame, John Jenkins Barrow, Gene Mac Winburn, Douglas C. McKillip, J. Ralph Beaird, Linda A. Klein, Irwin W. Stolz, Jr., Seaton D. Purdom, Atlanta, GA, for Defendants.

## ORDER

FITZPATRICK, Chief Judge.

On October 30, 1997, this Court entered an order granting summary judgment in favor of Defendants with respect to Plaintiff's Title VII disparate treatment claim. Because both parties failed to address Plaintiff's retaliation claim in their respective briefs, the Court ordered both parties to submit memoranda of law addressing this claim. Having considered the issue, the Court finds that Plaintiff has not established a claim for retaliation and hereby grants Defendants' motion for summary judgment as to that claim.

## I. FACTS

Plaintiff, Ram Bellam, M.D., whose national origin is Indian, is an anesthesiologist licensed to practice in the State of Georgia. Plaintiff had been employed at Athens Regional Medical Center for approximately three years when, in July 1995, the Medical Center of Anesthesiology of Athens, P.C. ("the Corporation") was formed, with which Plaintiff became employed. This corporation provides anesthesiology services to Athens Regional Medical Center ("Athens Regional").

Dr. William Buhrman, one of the defendants herein, served as both the President of the Defendant Corporation and Clinical Director of the Anesthesia Department of the medical staff at Athens Regional during the time this controversy arose. In both capacities, Dr. Buhrman supervised and directed the "on call" responsibilities of the physician employees of the Corporation, which included ensuring that anesthesiologist employees of the Corporation were available for surgical procedures at Athens Regional.

Dr. Buhrman became aware that certain surgeons at Athens Regional deemed Plaintiff incapable of providing reliable anesthesiology care to their surgical patients; some surgeons refused to allow Plaintiff to serve as the attending anesthesiologist in any of their surgical procedures. As such, Dr. Buhrman was forced to provide an additional on-call anesthesiologist whenever Plaintiff was scheduled to be on-call. As a result, the other anesthesiologists employed at the Corporation were required to assume more than their fair share of the on-call responsibilities for the Corporation, for which they were not compensated. Plaintiff was the only anesthesiologist employee of the Corporation with whom any of the surgeons on staff at Athens Regional refused to work.

Dr. Buhrman and the other anesthesiologist employees of the Corporation decided that it was necessary for Plaintiff either to resign his employment with the Corporation or be terminated as an employee. On November 20, 1995, this decision was communicated to Plaintiff. Plaintiff requested that the issue of his clinical competence be submitted to the peer review process administered by the medical staff of Athens Regional. Until the Corporation made the decision whether to grant Plaintiff's request, Plaintiff remained on leave of absence with pay and benefits at the rate appropriate for an anesthesiologist who does not take calls.

On November 30, 1995, the Corporation notified Plaintiff's attorney, by letter, that Defendants agreed to accept Plaintiff's request to submit Plaintiff's competence determination to peer review. On the same day, Plaintiff's attorney notified the Corporation's attorney of his resignation of his medical staff privileges at Athens Regional. Consequently, Plaintiff's employment as an anesthesiologist at the Corporation was terminated, because continued employment as an anesthesiologist employee of the Corporation is contingent on maintaining medical staff privileges at Athens Regional.

## II. RETALIATION

The burden of proof in retaliation cases under Title VII is governed by the same

framework as *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In order to survive summary judgment, Plaintiff must first establish a prima facie case of retaliation by showing that (1) he engaged in actions protected by Title VII, (2) an adverse employment action was taken against him, and (3) a causal link exists between the protected actions and the adverse employment decision. *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir.1994). Once a prima facie case has been established, the defendant may come forward with legitimate reasons for the employment action to negate the inference of retaliation. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993). If the defendant offers legitimate reasons for the employment action, the plaintiff must then "show that the employer's proffered reason for the adverse employment decision was false and that [retaliation] was the real reason." *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 440–41 (11th Cir.1996).

■ In his complaint, Plaintiff makes two allegations of retaliation. First, Plaintiff contends that Defendants threatened to file a negative report against Plaintiff to the National Physician's Data Bank (NPDB) if he contacted an attorney regarding Defendants' decision to remove Plaintiff from the Corporation's on call list. Because Plaintiff has produced no evidence that an adverse report was ever made to the NPDB, Plaintiff cannot support the second prong of his prima facie case—that an adverse employment action was taken against him. *Meeks*, 15 F.3d at 1021; *Bellam depo.*, p. 234. As such, Plaintiff is unable to sustain this allegation of retaliation.

■ Plaintiff's second allegation of retaliation is that he filed a complaint with the EEOC and that Defendants received notice of this fact before the final decision to terminate Plaintiff. Although Defendants might have communicated to Plaintiff their final decision to terminate Plaintiff after Plaintiff filed a complaint with the EEOC, Plaintiff has failed to show that Defendants' decision to terminate him was causally linked to his EEOC complaint; thus, Plaintiff has failed to establish the third prong of his prima facie case—a nexus between the adverse employment action and his protected activity. *Meeks*, 15 F.3d at 1021.

Even if Plaintiff could establish the causal connection between his EEOC complaint and Defendants' decision to terminate him, Defendants have adequately articulated non-discriminatory reasons for their actions. Plaintiff has not successfully rebutted these nondiscriminatory reasons such that a reasonable jury could find that these reasons were not the real reasons for their decision, but rather, are pretextual. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997); *Isenbergh*, 97 F.3d at 440–41. As counsel for Defendants aptly stated, "the Plaintiff's filing of his EEOC complaint immediately before the completion of the steps leading to the Plaintiff's termination cannot, without some proof of pretext, be the basis for a retaliation claim. If so, any employee confronted with procedures which appeared to be leading to a legitimate race-neutral termination could derail those procedures by filing a claim of discrimination and then claiming that the conclusion of the procedures was an act of retaliation." *Defendants' Supplemental Brief in Support of Their Motion for Summary Judgment*, at 6. As such, Plaintiff cannot sustain this allegation of retaliation.

Accordingly, Defendants' motion for summary judgment is hereby **GRANTED** with respect to all of Plaintiff's claims, including retaliation.