Lisa NAIA, Plaintiff,

v.

Mike DEAL, City Manager, City of Jesup, Individually and in his Official Capacity; Jack H. Knowles, Chief of Police, City of Jesup, Individually and in his Official Capacity; Glenn Takaki, Lieutenant, Jesup Police Department, Individually and in his Official Capacity; and the City of Jesup, Defendants.

No. CIV.A. CV297–113.

United States District Court, S.D. Georgia, Brunswick Division.

June 30, 1998.

O. Hale Almand, Jr., Macon, GA, for Plaintiff.

Terry Lee Readdick, Richard K. Strickland, Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, for Defendants.

## ORDER

ALAIMO, District Judge.

Plaintiff, Lisa Naia ("Naia"), alleges gender discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e *et seq.* (1994) and 42 U.S.C.A. § 1983 (1994). Currently before the Court is Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' Motion will be **GRANTED IN PART** and **DENIED IN PART.**

## FACTS

Naia has been a patrol officer for the Jesup Police Department (the "Department") since 1989. Defendants, Jack H. Knowles ("Knowles") and Glenn Takaki ("Takaki"), are her supervisors. During her tenure with the Department, Naia applied for three promotions and, on several occasions, for intoximeter training. In 1993, Naia applied for the position of corporal, but was not selected. Instead, Steve Ryals was promoted to corporal, and Art Bennett ("Bennett") and Melinda Yonkosky were made acting corporals. In 1994, Naia applied for the position of CODE Task Force Officer, but Roy Thornton ("Thornton") was chosen to fill that position. In 1995, Naia applied for a promotion to the position of detective. The promotions board initially selected Lawrence Moseley ("Moseley") for the position. Naia, however, filed an internal grievance alleging that the Department failed to comply with its procedure that required all candidates to take a written examination. In response to Naia's grievance, the selections board rescinded Moseley's promotion, and the candidates were given the examination. Moseley and Naia received identical scores on the examination, but Moseley was selected for the detective position. Additionally, all of Naia's requests for intoximeter training were denied without explanation.

On February 29, 1996, Naia filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she was denied fair training and promotional opportunities. She also claimed that she was harassed by Takaki and Harold Smith ("Smith"), another patrol officer. Naia claims that shortly after she began working for the Department, Smith began to follow her while she was both on and off duty and frequently left inappropriate notes on her time card. Additionally, she claims that Smith, on several occasions, threw M & M candies down her shirt and offered to retrieve them. He allegedly poked and touched Naia and once pressed his body against hers. Naia claims that she informed Takaki of Smith's behavior, but he refused to

take any remedial action. Naia contends that Smith's actions continued until 1993, when he allegedly unzipped her shirt while she was typing a police report. After this incident, Naia complained of Smith's behavior to Knowles. Knowles changed Naia's shift so that she no longer worked with Smith.

Naia continued in her position as patrol officer without incident until January 27, 1997. On this date, Naia and Knowles had a conversation about evidence which Naia claimed was missing. During the conversation, Knowles informed her that the evidence was stored in a cell in the flat top building, and that Officer Dwight Bettner ("Bettner") had the only key. After her conversation with Knowles, Naia called Bettner, and their discussion was recorded on police telephone lines. Naia informed Bettner that "... the chief is going over there tomorrow because he says if its [sic] missing your [sic] the one that had to have taken it because you are the only one with a key." Knowles denied making any such statement, and he recommended that Naia be terminated for falsely attributing that statement to him. Mike Deal ("Deal"), the City Manager, concurred in Knowles's recommendation.

Naia requested a hearing before the police disciplinary board, which consisted of three officers, Perry Morgan, Thornton and Takaki. Naia asked Takaki to recuse himself since she had named him in her EEOC charge, but he refused. After a hearing, the board suspended Naia for two weeks without pay, gave her a written reprimand, and placed her on probation for a period of six months. After the two week suspension, Naia returned to work.

## DISCUSSION

### I. Summary Judgment

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lordmann Enter., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994). After the movant meets this burden, "the non-moving party must make a sufficient showing to es-tablish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The Court should consider the pleadings, depositions, and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir.1992). However, to survive summary judgment, the plaintiff must present more than a mere "scintilla of evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986). "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id. See also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir.1996).

### II. 180–Day Filing Requirement

#### A. Gender Discrimination Claim

Plaintiff claims that Defendants denied her fair training and promotion opportunities based on her gender. (Pl.'s Opp'n Summ. J. at 14–15). Specifically, she claims that she was denied a corporal position in 1993 and a detective position in 1995, although qualified for both positions. (*Id.* at 14). She also alleges that on numerous occasions, Defendants denied her request to attend intoximeter training. (*Id.* at 15). In response, Defendants argue that Plaintiff's claims regarding the promotion in 1993 and the intoximeter training are barred because they did not occur within 180 days of the filing of her EEOC charge. (Defs.' Mot. Summ. J. at 8).

As a prerequisite to filing a Title VII lawsuit, a plaintiff must file a charge with the EEOC within 180 days of the alleged discrimination. 42 U.S.C.A. § 2000e–5(e) (1994). *See also Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir.

1993); *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992); *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980). If the plaintiff fails to do so, the claim is procedurally barred.

In this case, Plaintiff filed her EEOC charge in February of 1995. It is undisputed that the denial of the corporal position in 1993 is outside of the 180–day period. With respect to Plaintiff's claim that she repeatedly was denied the opportunity to attend intoximeter training, it is unclear from the record before the Court when these denials occurred. Thus, Plaintiff has failed to satisfy her burden of showing that the action complained of occurred within the prerequisite 180 day period. *See Roberts v. Gadsden Mem'l Hospital,* 850 F.2d 1549, 1550 (11th Cir.1988) (stating that the plaintiff has to show that the actionable conduct occurred within 180 days of filing an EEOC charge).

■ Plaintiff, however, contends that these claims are not barred because they are part of a "continuing violation." (Pl.'s Opp'n Summ. J. at 8). Courts have excepted to the 180–day rule where the plaintiff's untimely claim was part of a continuing violation. *See Beavers,* 975 F.2d at 796; *Roberts,* 850 F.2d at 1550; *Gonzalez,* 610 F.2d at 249. In order to establish a continuing violation, a plaintiff must demonstrate that the untimely act is part of an ongoing discriminatory practice or policy. *Roberts,* 850 F.2d at 1550. Isolated acts of discrimination are not sufficient to invoke the continuing violation exception, and the harm suffered must be more than the lasting impact of the violation about which she complains. *Id.*

■ In this case, Plaintiff claims that the denial in 1993 and the repeated denials of intoximeter training were part of Defendants' ongoing discriminatory practice. (Pl.'s Opp'n Summ. J. at 15). She claims that Defendants operate the Jesup Police Department's training and promotional system so as to prevent women from attaining high-ranking positions. (*Id.*) Plaintiff claims that Defendants' discriminatory policy is evidenced by the fact that during the history of the

Jesup Police Department only one female officer has attained a position of rank. (Knowles Dep. at 91; Naia Aff. ¶ 5). Additionally, there is evidence that the Department has not sent any women to intoximeter school, although several requests have been made. (Naia Aff. ¶ 9). This lack of training prevents women from filling positions that require intoximeter certification. Viewing the evidence in the light most favorable to Plaintiff, a question of fact remains as to whether Defendants' alleged discrimination constitutes a continuing violation of Title VII. Therefore, the Court will deny Defendants' Motion for Summary Judgment on this ground. *See Clark v. Olinkraft, Inc.,* 556 F.2d 1219, 1221 (5th Cir.1977)[1] (finding a continuing violation where the plaintiff was denied promotions); *EEOC v. Crown Liquors of Broward, Inc.,* 503 F.Supp. 330, 336 (S.D.Fla.1980)(same).

## B. Hostile Workplace Sexual Harassment

Defendants also argue that Plaintiff's sexual harassment claim must fail because the only incidents with "sexual overtones" alleged by Plaintiff occurred more than 180 days before she filed her EEOC charge. (Defs.' Mot. Summ. J. at 18). Plaintiff, however, claims that the earlier incidents are part of a "continuing violation." (Pl.'s Opp'n Summ. J. at 20–22).

■ There are two forms of sexual harassment that are actionable under Title VII. *Fleming v. Boeing Co.,* 120 F.3d 242, 244 (11th Cir.1997); *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.). The first type is *quid pro quo* sexual harassment, which "involves a supervisor's attempt to garner sexual consideration from an employee by offering job benefits as a *quid pro quo.*" *Dees v. Johnson Controls World Servs. Inc.,* 938 F.Supp. 861, 865 (S.D.Ga. 1996) (citing *Mills v. Amoco Performance Prod., Inc.,* 872 F.Supp. 975, 989 (S.D.Ga. 1994)). The second form is sexual harassment that creates a hostile work environment, that is, a "workplace [so] permeated

1. The Eleventh Circuit, in the *en banc* decision in *Bonner v.. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

with discriminatory intimidation, ridicule, and insult that ... it alter[s] the conditions of the victim's employment...." *Oncale,* —— U.S. at ——, 118 S.Ct. at 1001 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301 (1993)). *See also Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 59–60 (1986). In this case, Naia claims hostile work environment sexual harassment.

█ In order to make out a prima facie case of hostile work environment sexual harassment, a plaintiff must show: (1) membership in a protected group, (2) unwelcome harassment, (3) that the harassment was based on sex, (4) that the harassment affected a term, condition or privilege of employment, and (5) that the employer knew or should have known of the harassment and failed to take remedial action. *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 903–4 (11th Cir.1988); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987); *Henson,* 682 F.2d at 903–905.

█ In this case, Naia filed her EEOC charge on February 29, 1996. Although she relies on specific instances of discrimination to support her claim that a hostile environment existed, she alleges that the hostile environment was a continuing violation. *See Morrow v. Auburn Univ.,* 973 F.Supp. 1392, 1401 (M.D.Ala.1997) (holding that a claim of hostile work environment is a continuing violation because it involves a pattern of offensive conduct). *See also Quillen v. American Tobacco Co.,* 874 F.Supp. 1285, 1292–93 (M.D.Ala.1995). Shortly after Naia began working for the Jesup Police Department, Officer Smith allegedly threw M & M candies down Plaintiff's shirt and offered to retrieve them. (Naia Aff. ¶ 10). He also poked and touched Plaintiff, followed her while she was on and off duty, and left inappropriate notes on her time card. (*Id.* ¶ 11). Additionally, on one occasion, Smith pressed his body against Naia's back and, on another, he unzipped her shirt. (*Id.* ¶ 12). In 1993, Knowles switched Naia's shift so that she would not work with Smith. However, Plaintiff claims that Smith continued to harass her. In February of 1995, Smith ran an illegal GCIC check on Naia. (*Id.* ¶ 24). He

also tampered with her incident reports. (Naia Dep. at 79). Presumably, Plaintiff's harassment was a continuing violation. *See Morrow,* 973 F.Supp. at 1401; *Quillen,* 874 F.Supp. at 1292–93. Accordingly, the Court cannot find as a matter of law that no hostile work environment existed in the 180 days prior to Plaintiff's EEOC charge.

### III. *Title VII Gender Discrimination*

Defendants claim that Plaintiff has failed to present a prima facie case of gender discrimination. (Defs.' Mot. Summ. J. at 10). They argue that Plaintiff cannot show that she was more qualified than the officers selected for the positions she was denied. (*Id.*) Plaintiff, on the other hand, contends that she has presented substantial evidence that she was more qualified than the male employees selected for the positions. (Pl.'s Opp'n Mot. Summ. J. at 14).

█ Title VII prohibits an employer from discriminating against any employee on the basis of gender with respect to the terms and conditions of employment. 42 U.S.C.A. § 2000e (1994). A plaintiff may establish a prima facie case of gender discrimination under Title VII by one of three methods: (1) direct evidence of discriminatory intent, (2) statistical proof of disparate treatment, or (3) circumstantial evidence that meets the test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under all methods, the plaintiff's burden to prove the prima facie case is light. *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 439 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997).

In a Title VII case where the plaintiff relies on circumstantial evidence to prove unlawful discrimination, as in this case, the Court follows the test set forth in *McDonnell Douglas.* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Under this test, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–78. Once the plaintiff establishes the prima facie case, the burden shifts to the defendant to produce some "legitimate, nondiscriminatory reason" for the ad-

verse employment decision. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981). The defendant only is required to articulate, not prove, a nondiscriminatory reason. Thus, the burden is 'exceedingly light.' *Walker*, 53 F.3d at 1556 (quoting *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir.1983)). If the defendant meets this burden, the presumption raised by the prima facie case "drops from the case." *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 (11th Cir.1996). Then, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons were not its true motivation, but a pretext for discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217.

 In order to establish a prima facie case of gender discrimination, the plaintiff must show that: (1) she is a member of a protected class, (2) she applied and was qualified for a promotion, (3) she was rejected, and (4) an equally or less qualified person who is not a member of the protected class was hired. *Arrington v. Cobb County*, 139 F.3d 865, 873 (11th Cir.1998); *Batey v. Stone*, 24 F.3d 1330, 1334 n. 11 (11th Cir. 1994). In this case, it is undisputed that Naia has satisfied the first three prongs of the prima facie case. Naia is a women, she applied for promotions to both corporal and detective positions, and she was rejected. At issue is whether Naia was equally or more qualified than the men selected for the positions.

Naia has presented sufficient evidence that she was qualified for both the corporal and the detective positions. She graduated from mandate school in March of 1990, and since that time, has participated in over a thousand hours of additional law enforcement courses. (Naia Aff. ¶ 6). Moreover, based on the evidence before the Court, Naia was an exemplary patrol officer. She worked for the Jesup Police Department from December of 1989 until October of 1996 without a single reprimand. (*Id.* ¶ 32). In contrast, Bennett, one of the male officers selected to be acting corporal, was reprimanded on several occasions. (*Id.* ¶ 17). Bennett also initially failed to graduate from the police academy and had participated in fewer training courses than

Naia. (*Id.*) Plaintiff has raised a question of fact as to whether Bennett was more qualified for the acting corporal position. As for the detective position, it is undisputed that Moseley, the officer selected for the promotion, and Naia received identical scores on their written exams. (Knowles Aff. ¶ 11). A genuine question of material fact remains as to whether Moseley was more qualified than Naia for the position.

Defendants assert that the promotions of Bennett and Moseley were based on their superior skills and experience as compared to Naia's. (Defs.' Mot. Summ. J. at 10). They claim that the fact that Naia is a woman never entered into the calculus. (*Id.*) Plaintiff, however, has presented evidence that Defendants' claim is unworthy of credence, and that Defendants often considered gender in making employment decisions. Specifically, Plaintiff has presented evidence that Defendants overlooked improper conduct on the part of male officers, yet reprimanded female officers for minor infractions. For example, there is evidence that Officer Smith sexually harassed Plaintiff. On a number of occasions, Smith allegedly threw M & M candies down Plaintiff's shirt and offered to retrieve them. (Naia Aff. ¶ 10). He also repeatedly poked and touched Plaintiff, and once unzipped her shirt. (*Id.* ¶¶ 11, 12). Although Defendants, Knowles and Takaki, were informed of Smith's behavior, no action was taken against him. Similarly, there is evidence that Officer Burke hit a subdued arrestee on the head with a flashlight and, on a separate occasion, unnecessarily shot his gun in the vicinity of a church, and no action was taken against him. (Morgan Dep. 9–10; Knowles Dep. at 53–55). Also, there is evidence that Sergeant Weatherspoon allegedly used and seriously damaged city property, yet he was not reprimanded. (Joel Smith Dep. at 30–32). In contrast, Knowles terminated a female employee, Lynn Morar–Jacobs, because she filed a grievance regarding her salary and for not following proper procedures. (Knowles Dep. at 6).

In this case, the Court finds that genuine issues of material fact preclude the grant of summary judgment. By presenting evidence that Defendants allegedly treated male and

female officers differently, Plaintiff has cast doubt on Defendants' proffered explanation for the denial of promotions.[2] Accordingly, the Court will deny Defendants' Motion for Summary Judgment as to Plaintiff's claim of gender discrimination. *See Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 851 (11th Cir.1997) (stating that summary judgment generally is inappropriate in cases where the plaintiff has established a prima facie case because of the 'elusive factual question' of intentional discrimination).

## IV. *Equal Protection Claim*

▉ Naia also brings this action under 42 U.S.C.A. § 1983 based on an alleged violation of the Equal Protection Clause of the Fourteenth Amendment. In cases where § 1983 is employed as a remedy for the same conduct attacked under Title VII, "the elements of the two causes of action are the same." *Cross v. State of Ala.*, 49 F.3d 1490, 1508 (11th Cir.1995) (quoting *Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n. 16 (11th Cir.1982)). *See also Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991). Accordingly, the Court's determination that Naia presented sufficient evidence of discrimination to survive summary judgment on her Title VII claim applies to this claim as well. *See* discussion *supra* Part III.

### A. Individual Capacity

Defendants, Deal, Knowles and Takaki, claim that they are entitled to qualified immunity from suit in their individual capacity. (Defs.' Mot. Summ. J. at 25). Plaintiff, however, contends that Defendants are not entitled to qualified immunity because their actions violated clearly established law. (Pl.'s Opp'n Summ. J. at 25).

Qualified immunity is an affirmative defense that shields governmental officials performing discretionary functions from civil liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396. *See also Spivey v. Elliott*, 29 F.3d 1522, 1524 (11th Cir.1994). "If the law was clearly established, the immunity defense

ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738, 73 L.Ed.2d at 411. *See also Martin v. Baugh*, 141 F.3d 1417, 1418 (11th Cir.1998); *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir.1996). An "objective reasonableness" standard is used to determine whether the law was clearly established. *Stough v. Gallagher*, 967 F.2d 1523, 1525 (11th Cir.1992).

▉ In the Eleventh Circuit, the "objective reasonableness" standard is applied through a two-part analysis:

(1) The defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'

(2) Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. The burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional laws.'

*Id.* at 1526 (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir.1988)).

▉ In this case, it is undisputed that Defendants, Deal, Knowles and Takaki, were acting within the scope of their discretionary authority when they made decisions regarding promotions, training and disciplinary matters. As for the second part of the analysis, it is well-settled that "government action that discriminates on the basis of sex is unconstitutional ...." *Nicholson v. Georgia Dep't of Human Resources*, 918 F.2d 145, 148 (11th Cir.1990). *See also Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Califano v. Webster*, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977); *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Plaintiff has adduced sufficient evidence to create a genuine issue of fact as to whether

2. Defendants fail to provide any explanation for why Plaintiff was denied intoximeter training.

Defendants treated her differently from male employees solely because of her sex. *See* discussion *supra* Part III. Therefore, Defendants are not entitled to qualified immunity on Plaintiff's claim that Defendants, in their individual capacities, discriminated against her on the basis of her gender.

■ Defendants, however, are entitled to qualified immunity on Plaintiff's claim that they retaliated against her in violation of the equal protection clause. "No clearly established right exists under the equal protection clause to be free from retaliation." *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995). Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to this claim.

### B. Official Capacity

Defendants contend that Plaintiff's claim against the City of Jesup and the Defendants in their official capacities must fail because she has not shown any discriminatory behavior on the part of official decision-makers. (Defs.' Mot. Summ. J. at 25). Plaintiff, however, claims that Deal, the Jesup City Manager, was aware of gender discrimination with the Department and allowed it to continue. (Pl.'s Opp'n Summ. J. at 25).

■ Section 1983 liability cannot be imposed upon governmental entities under a theory of respondeat superior. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611, 638 (1978). Instead, a government entity is liable under § 1983 only where the plaintiff's injury results from the application of a policy or custom. *Id.* at 694, 98 S.Ct. at 2035–36, 56 L.Ed.2d at 638. The policies and customs of either the entity itself or its official policy-makers can give rise to liability if their application results in a deprivation of a plaintiff's constitutional rights. *Id.* The single decision of an official policy-maker can establish the existence of an unconstitutional municipal policy. *Martinez v. City of Opa–Locka*, 971 F.2d 708, 713 (11th Cir.1992).

■ In this case, Deal possessed final policy-making authority in the realm of personnel matters. *See Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir.1996) (stating that city manager had final decision-making authority over personnel decisions in the police department). There is evidence that he was aware of the prevalence of gender discrimination with the Department, but he allowed it to continue. Plaintiff claims that she informed Deal of Smith's improper behavior, but that he took no action. (Naia Aff. ¶ 14). Additionally, there is evidence that Deal was aware of the disparity in reprimands given male and female officers. Yet, he concurred in Knowles' decision to terminate Plaintiff. (*Id.*) *See also Hill*, 74 F.3d at 1152 (stating that a city can be held liable where the authorized policy-makers "approve a subordinate's decision and the basis for it"). Plaintiff has presented sufficient evidence to raise a question of fact as to whether the City of Jesup, through its manager, Deal, had a policy of discriminating against women officers based on their gender.

## V. § 1983 Civil Conspiracy

### A. Intra–Corporate Conspiracy Doctrine

■ Defendants contend that Plaintiff's conspiracy claim must fail because her allegations of conspiratorial conduct concern only a single entity, the City of Jesup, and intra-corporate actions are not within the scope of 42 U.S.C.A. § 1983. (Defs.' Mot. Summ. J. at 6). As an initial matter, the Court must first determine whether the doctrine of intra-corporate conspiracy applies in actions brought under § 1983.

■ Under basic agency principles, the law personifies corporations and the actions of its employees are considered to be those of the corporation. *See United States v. Hartley*, 678 F.2d 961, 971 (11th Cir.1982). The doctrine of intra-corporate conspiracy developed pursuant to this fiction of corporate personification. The Fifth Circuit first articulated this doctrine in the context of antitrust law in *Nelson Radio & Supply v. Motorola*, 200 F.2d 911 (5th Cir.1952). The court in *Motorola* reasoned that "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Id.* at 914. Since the Fifth Circuit's decision, courts consistently have applied the doctrine in anti-trust actions.

See Tose v. First Pa. Bank, N.A., 648 F.2d 879 (3rd Cir.1981); Spectrofuge Corp. v. Beckman Instruments, Inc., 575 F.2d 256 (5th Cir.1978); Morton Bldgs. of Neb., Inc. v. Morton Bldgs., Inc., 531 F.2d 910 (8th Cir. 1976); Greenville Publ'g, Co. v. Daily Reflector, Inc., 496 F.2d 391 (4th Cir.1974). The circuits, however, are split on the question of whether the intra-corporate conspiracy doctrine applies beyond the confines of anti-trust law. See Hull v. Cuyahoga Valley Bd. of Educ., 926 F.2d 505, 509 (6th Cir.1991) (applying the intra-corporate conspiracy doctrine to claims under 42 U.S.C.A. § 1985); Travis v. Gary Community Mental Health Ctr., 921 F.2d 108, 111 (7th Cir.1990) (same); Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir.1985) (same). But see Stathos v. Bowden, 728 F.2d 15, 20–21 (1st Cir.1984) (refusing to apply the doctrine to a claim under 42 U.S.C.A. § 1985); Novotny v. Great Am. Fed. Sav. & Loan Ass'n., 584 F.2d 1235, 1257 (3rd Cir.1978), vacated on other grounds, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (same).

While the Eleventh Circuit has not addressed the precise issue in this case, whether the intra-corporate conspiracy doctrine applies to civil conspiracies alleged under 42 U.S.C.A. § 1983, it has refused to extend the doctrine to cases involving criminal conspiracy. See Hartley, 678 F.2d at 972. In Hartley, the court emphasized the unique nature of anti-trust law, which is intended to prevent two or more companies.from joining together to make monopolistic decisions that restrain free trade. Id. at 971. The court determined that anti-trust laws necessarily apply only to conspiracies between distinct entities and not to those decisions made among the employees of a single corporation. Id. The court, however, doubted the applicability of the intra-corporate conspiracy doctrine outside the realm of anti-trust law. It explained that the fiction of corporate personification "originated to broaden the scope of corporate responsibility" and never was intended "to shield individuals or corporations from criminal liability." Id. at 972. The court held that the employees of a corporation can conspire in violation of criminal conspiracy statutes and it noted with approval courts that have refused to apply the doctrine in the context of civil conspiracies under § 1985. Id. at 971.

Based on the Eleventh Circuit's opinion in Hartley, the Court declines to extend the application of the intra-corporate doctrine beyond the scope of anti-trust law. See Hartley, 678 F.2d at 972; Stathos, 728 F.2d at 15; Novotny, 584 F.2d at 1257; Saville v. Houston County Healthcare Auth., 852 F.Supp. 1512, 1539 (M.D.Ala.1994) (holding that the intra-corporate conspiracy doctrine does not apply in a § 1985 action); Jacobs v. Board of Regents, 473 F.Supp. 663, 670 (S.D.Fla.1979) (same). If the Court were to hold otherwise, two or more persons could incorporate in order to immunize their illegal acts from prosecution, a result which the Court cannot condone. Accordingly, summary judgment based on the doctrine of intra-corporate conspiracy would be inappropriate.

**B. Pre-emption**

■ Alternatively, Defendants argue that Plaintiff's conspiracy claim is pre-empted by Title VII because the conspiracy is premised on alleged gender discrimination. (Defs.' Mot. Summ. J. at 8). Plaintiff, however, contends that Title VII is not the exclusive remedy for gender discrimination. (Pl.'s Opp'n Mot. Summ. J. at 9).

Plaintiff's conspiracy claim is not barred by Title VII. It is well-settled that Title VII is not the exclusive remedy for employment discrimination. Rather, a plaintiff may assert a cause of action for employment discrimination pursuant to both Title VII and § 1983. See Arrington, 139 F.3d 865; Johnson v. City of Fort Lauderdale, 114 F.3d 1089 (1997); Cross v. State of Ala., 49 F.3d 1490 (11th Cir.1995); Suber v. Bulloch County Bd. of Educ., 722 F.Supp. 736 (S.D.Ga. 1989).

Defendants, however, argue that employees will be able to circumvent Title VII's procedural safeguards by suing for employment discrimination under § 1983. (Defs.' Mot. Summ. J. at 8). The Eleventh Circuit, however, has considered and rejected this argument. See Johnson, 114 F.3d at 1092. In Johnson, the court reasoned that while allowing suit under § 1983 for employment discrimination may, in some cases, undermine Title VII's procedural safeguards, "such a result is merely 'a by-product' of Con-

gress's choice to make multiple remedies available." *Id.* Accordingly, the Court finds that Plaintiff's § 1983 civil conspiracy claim is not pre-empted.

### B. Prima Facie Case

■ Finally, Defendants contend that Plaintiff fails to provide sufficient proof of conspiratorial action. (Defs.' Mot. Summ. J. at 7 n. 2). Plaintiff, however, argues that she has presented ample evidence to support her claim that Defendants conspired to deprive her of her constitutional rights. (Pl.'s Opp'n Summ. J. at 9).

A successful § 1983 action requires a plaintiff to show that the conduct complained of: (1) was committed by a person acting under color of state law, and (2) deprived her of rights, privileges or immunities secured by the Constitution or laws of the United States. *City of Chicago v. International College of Surgeons,* — U.S. —, 118 S.Ct. 523, 537, 139 L.Ed.2d 525 (1997); *Doe v. Chiles,* 136 F.3d 709, 713 (11th Cir.1998). To establish a conspiracy under § 1983, the plaintiff "must show that the parties reached an understanding to deny plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." *Bendiburg v.. Dempsey,* 909 F.2d 463, 468 (11th Cir.1990). *See also Bailey v. Board of County Comm'rs,* 956 F.2d 1112, 1122 (11th Cir.1992); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988). A prima facie case of conspiracy can be based on circumstantial evidence. *Burrell v. Board of Trustees of Ga. Military College,* 970 F.2d 785, 788 (11th Cir.1992).

In this case, Plaintiff has presented evidence that Defendants, Knowles, Takaki and Deal, in their official capacities, worked together to keep women relegated to lower-ranking positions in the Department. *See* discussion *supra* Part III. Currently, only one women holds a position of rank, and Naia, while qualified, was denied promotions repeatedly. Additionally, there is evidence that female officers were reprimanded for minor infractions, while unprofessional and unethical behavior on the part of male officers was overlooked. *See* discussion *supra* Part III. Finally, there is evidence that Deal, Knowles and Takaki were aware of Smith's harassing behavior, yet allowed it to continue. (Naia Aff. ¶ 14). Plaintiff has produced

sufficient evidence to allow her conspiracy claim to continue.

## VI. *Retaliation*

Naia claims that Defendants retaliated against her for filing a charge with the EEOC on February 29, 1996. (Pl.'s Opp'n Summ. J. at 22). She claims that Defendants intentionally misconstrued her conversation with Officer Bettner in order to manufacture grounds for her termination. (*Id.* at 24). Defendants, however, argue that Plaintiff has failed to establish a prima facie case of retaliation. (Defs.' Mot. Summ. J. at 23). Defendants also contend that they are entitled to summary judgment because legitimate, non-retaliatory reasons exist for their challenged actions. (*Id.* at 24).

■ "Title VII prohibits an employer from taking adverse employment action against an employee in retaliation for her opposition to discriminatory practices." *Reynolds v. CSX Transp., Inc.,* 115 F.3d 860, 868 (11th Cir.1997), *petition for cert. filed,* — U.S. —, 118 S.Ct. 2364, 141 L.Ed.2d 732 (1998) (No. 97–726) (citing 42 U.S.C. § 2000e–3(a)). The anti-retaliation provision of Title VII should be given expansive reading in order to further its remedial purposes. *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1185 (11th Cir.1997); *Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1006 n. 18 (5th Cir.1969).

A plaintiff alleging retaliation has the initial burden of establishing a prima facie case. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–78. To establish a prima facie case of retaliation, the plaintiff must show that: (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities. *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1196 (11th Cir. 1997); *Fleming v. Boeing Co. .,* 120 F.3d 242, 248 (11th Cir.1997); *Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1074 (11th Cir.1995). Once the plaintiff establishes the prima facie case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing some legitimate reasons for the adverse employment decision."

*Raney*, 120 F.3d at 1196 (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir.1993)). If the defendant meets this requirement, then the burden "shifts back to the plaintiff to raise a genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory action." *Id.*

## A. Adverse Employment Action

 Defendants contend that Plaintiff did not suffer any adverse employment act in retaliation for an EEOC complaint she filed in February of 1996. (Defs.' Mot. Summ. J. at 23). They claim that Knowles merely recommended to a disciplinary board that Plaintiff be terminated because of her conversation with Bennett, but he did not actually terminate Plaintiff. (*Id.*) Defendants, however, overlook the fact that based on Knowles' report and recommendation, Plaintiff was suspended for two weeks without pay, received a written reprimand, and was placed on probation for a period of six months. Such treatment constitutes an adverse employment action for the purposes of Title VII. *See Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir.1998) (holding that written reprimands and one-day suspensions constituted adverse employment actions for the purposes of a retaliation claim); *Hairston*, 9 F.3d at 919 (holding that a thirty day suspension without pay was an adverse employment action); *Fowler v. Sunrise Carpet Indus., Inc.*, 911 F.Supp. 1560, 1582 (N.D.Ga.1996) (holding that a written reprimand was an adverse employment action).

## B. Causal Relationship

 Defendants claim that the decision to discipline Plaintiff cannot be retaliatory because it was made by an independent disciplinary board. (Defs.' Mot. Summ. J. at 23). They claim that the use of the board precludes Plaintiff from establishing causation. (*Id.*).

 The "causal link" requirement should be construed broadly and merely requires the plaintiff to demonstrate "that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985). *See also Wideman*, 141

F.3d 1453, 1455; *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1524 (11th Cir.1991). The plaintiff can meet this test by showing that the defendant actually was aware of the protected activity at the time of the adverse employment actions. *Raney*, 120 F.3d at 1197; *Wideman*, at 1454, 1455; *McCollum*, 794 F.2d at 610–11. The plaintiff may rely on circumstantial evidence to demonstrate the causal relationship. *Raney*, 120 F.3d at 1197 (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163–64 (11th Cir.1993); *Weaver*, 922 F.2d at 1525). *See also Lobeck*, 976 F.Supp. at 1467.

In this case, the disciplinary board consisted of three male police officers, Morgan, Thornton and Takaki. It is undisputed that all three were aware of Plaintiff's EEOC charge. In fact, Plaintiff complained of Takaki in her EEOC charge. Prior to the hearing, Plaintiff argued that Takaki would be biased and asked him to recuse himself, but Takaki refused. Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether a causal relationship exists between her protected activity and the adverse employment action she suffered.

## C. Nonretaliatory Reason

 Defendants contend that a legitimate, nonretaliatory reason exist for the alleged adverse employment action which warrants the grant of summary judgment. (Defs.' Mot. Summ. J. at 24). Specifically, Defendants claim that Plaintiff was disciplined because she attributed a statement to Knowles that he had not made. (*Id.*) Plaintiff argues that a question of fact remains as to whether Defendants' proffered reason is merely pretextual.

After a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a nonretaliatory reason for the actions taken. *Raney*, 120 F.3d at 1196; *Morgan v. City of Jasper*, 959 F.2d 1542, 1548 (11th Cir.1992). If the defendant meets its burden, then the employee must present sufficient evidence for a reasonable jury to conclude that the proffered reason is pretextual. *Raney*, 120 F.3d at 1196; *Morgan*, 959 F.2d at 1547; *Bellam v. Medical Ctr. Anesthesiology*, 992 F.Supp. 1481, 1483

(M.D.Ga.1998). The plaintiff can meet this burden by showing either retaliatory motive or that the defendant's reason is unbelievable. *Morgan,* 959 F.2d at 1548. The plaintiff may rely on the same evidence that was presented to establish the prima facie case to prove the existence of a discriminatory motive. *Lobeck,* 976 F.Supp. at 1467. Generally, if the plaintiff establishes a prima facie case, summary judgment is inappropriate due to the difficulty in proving by direct evident the existence of an improper motive. *Hudson v. Southern Ductile Casting Corp.,* 849 F.2d 1372, 1376 (11th Cir.1988); *Fowler,* 911 F.Supp. at 1582.

Plaintiff claims that the fact that several male officers acted in ways unbecoming to an officer, yet were not disciplined, demonstrates that Defendants' proffered explanation is pretextual. (Pl.'s Opp'n Summ. J. at 20–22). *See* discussion *supra* Part III B. As discussed in reference to Plaintiff's gender discrimination claim, there is evidence that Smith harassed Plaintiff on a number of occasions. (Naia Aff. ¶¶ 10–12). Although Plaintiff made Defendants aware of Smith's conduct, he was not reprimanded. (*Id.*) Additionally, in 1995, Smith ran an illegal GCIC check on Naia, which is a felony. He was suspended for only one week and placed on six months probation. (Naia Dep. at 187). There also is evidence that Officer Burke hit a subdued arrestee on the head with a flashlight and unnecessarily shot his gun in the vicinity of a church, and that Sergeant Weatherspoon used and seriously damaged city property. Neither officer was reprimanded. (Morgan Dep. 9–10; Knowles Dep. at 53–55; Joel Smith Dep. at 30–32). Yet, Knowles recommended that Plaintiff be terminated for allegedly attributing a statement to him that he did not make, and the disciplinary board suspended her for two weeks, gave her a written reprimand, and placed her on probation for six months.

Plaintiff has worked for the Jesup Police Department since 1989. Prior to filing her EEOC charge, Plaintiff had not received a single reprimanded. The jury could use the evidence of disparate treatment, as well as the curious timing of events, to conclude that Defendants' explanation for the adverse employment actions was pretextual. Therefore, the Court will deny Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim.

### VII. *Due Process*

Plaintiff withdraws her claim that Defendants denied her of a liberty interest without due process of law and violated a substantive right protected by the Due Process Clause of the Fourteenth Amendment. (Pl.'s Opp'n Summ. J. at 6). It is unclear, however, whether Plaintiff has withdrawn her claim that Defendants denied her of a property interest without due process of law. Nonetheless, Plaintiff fails to respond to this claim. Pursuant to the Local Rules of the Southern District of Georgia, "[f]ailure to respond shall indicate that there is no opposition to the motion." Local R. 7.5. Therefore, the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's claim that Defendants denied her of a property interest without due process of law.

### *CONCLUSION*

After careful review of the briefs and affidavits submitted by the parties, the Court hereby GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's equal protection retaliation and due process claims. The Court DENIES Defendant's Motion with respect to all remaining claims.